**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| DAE EEK CHO,              ) | |
|                 ) | |
|        Plaintiff,      ) | |
|                 ) | |
|        v.              ) | CIVIL ACTION NO. 5:13-CV-153 (MTT) |
|                 ) | |
| UNITED STATES OF AMERICA, ) | |
|                 ) | |
|        Defendant.      ) | |
| _____ ) | |

## <u>ORDER</u>[1]

This matter is before the Court on Plaintiff Dae Eek Cho's numerous motions for recusal of the Court pursuant to 28 U.S.C. §§ 144 and 455.[2]  (Docs. 43; 45; 49; 54; 60; 76).  For the reasons discussed below, those motions are **DENIED**.

### I.  BACKGROUND

The Plaintiff is a Korean national.  She was granted a six-month tourist visa, which expired on August 10, 1999.  (Doc. 11-2).  On August 27, 2007, immigration authorities issued to the Plaintiff a Notice to Appear before an immigration judge in proceedings seeking her removal from the United States for overstaying her visa.  (Doc. 11-2).  The Plaintiff's case was scheduled for a hearing before the immigration court in Honolulu, Hawaii, on December 10, 2007.  (Doc. 11-3).  The Plaintiff failed to appear for the hearing, and an immigration judge administratively closed her case.  (Doc. 11-4).

---

[1] This Order revises the Court's Order of September 25, 2014.  This revision recharacterizes a minor point not material to the Order's conclusion.

[2] "Sections 144 and 455 of Title 28 are construed *in pari materia*." *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 824 (11th Cir. 2009) (citing *In re Corrugated Container Antitrust Litig.,* 614 F.2d 958, 965 (5th Cir.1980)).

After being detained for shoplifting charges at the Gwinnett County Detention Center ("GCDC") in Lawrenceville, Georgia, the Plaintiff's immigration case was transferred from Honolulu to Atlanta, Georgia.  (Docs. 39-1 at 130:7-15; 11-5 at 2).  The Plaintiff's first immigration hearing was scheduled for April 27, 2011, but the immigration judge administratively closed her case because she was still at the GCDC at the time of the hearing.  (Doc. 11-7).  The Plaintiff filed a motion to reopen her case after she was transferred into the custody of Immigration and Customs Enforcement ("ICE").  (Doc. 11-6).

On April 29, 2011, the Plaintiff's husband, Edward Lamar Bloodworth, called the ICE duty desk and spoke with Immigration Enforcement Agent Gary Burcham. *Bloodworth v. United States*, 5:13-CV-112, Doc. 74 at 2.  Bloodworth's first statement to Burcham was, "Is there anybody at Immigration that has any sense?"  *Id.*  While Burcham attempted to answer Bloodworth's questions politely, Bloodworth continued to complain about the immigration system in a "belligerent and angry" tone before hanging up.  *Id.*  Bloodworth called back ten to fifteen times that day and a few times the next day, but ICE agents were instructed not to answer any other calls from Bloodworth's number.  *Id.*

On May 11, 2011, the Plaintiff and Bloodworth went to the immigration courthouse in Atlanta for the Plaintiff's immigration hearing.  *Id.*  Judge William Cassidy discussed the Plaintiff's immigration status with her and Bloodworth.  *Id.*  Because the Plaintiff was facing deportation, she wanted to file a Form I-601, Application for Waiver of Grounds of Inadmissibility, for waiver of her crimes so that she could adjust her status to a permanent resident based on hardship to Bloodworth as her United States citizen

spouse.  (Doc. 1 at ¶ 12).  Judge Cassidy provided the Plaintiff with the application and instructed her and Bloodworth to return on May 25, 2011 with all of the documents and evidence necessary to adjudicate the request for the waiver.  (Doc. 1 at ¶ 12).

On May 13, 2011, Bloodworth called the ICE duty desk and left a voice message in which he stated his name and number and yelled, "Call me!"  *Bloodworth*, 5:13-CV-112, Doc. 74 at 3.  An ICE agent contacted the Federal Bureau of Investigation, and an FBI agent referred the matter to the Joint Terrorism Task Force.

On May 25, 2011, the Plaintiff and Bloodworth returned to the immigration courthouse in Atlanta.  *Id.*  When the Plaintiff's case was called, Judge Cassidy informed the Plaintiff that her case would have to be continued.  *Id.* at 5.  Bloodworth was no longer in the courthouse and available to participate in the hearing.  An ICE agent had asked building security to escort Bloodworth out of the building, although Bloodworth quickly made his way out of the building before he could be physically removed.  *Id.* at 4.  Bloodworth had aggressively pushed past an ICE agent to speak with the Plaintiff, refused to leave the courtroom after being told to do so, and made a second attempt to speak with the Plaintiff after being told that he was not allowed to have contact with her.  *Id.* at 3-4.

The next day, May 26, ICE agents created a "Be on the Lookout" ("BOLO") alert for Bloodworth.  *Id.* at 5.  The alert was created because of the statements made by Bloodworth during his calls to the ICE duty desk and his disruptive behavior during the Plaintiff's immigration proceedings.  *Id.*  The purpose of the BOLO was for officer awareness and safety and to notify any agents or court personnel who encountered

Bloodworth in or around the building to report it immediately to Federal Protective Service and the Homeland Security Investigations duty agent.  *Id.*

Between June 8, 2011 and February 21, 2012, the Plaintiff had numerous immigration court hearings.  *Id.* at 5-9.  On June 8, June 29, and July 7, the Plaintiff's attorney, Joseph Azar, requested a continuance.  *Id.* at 5-7.  Subsequently, the Plaintiff and Bloodworth fired Azar and retained new counsel.  *Id.* at 6.  On September 14, attorney Christopher Palazzola appeared on behalf of the Plaintiff.  *Id.*  The hearing was rescheduled because Palazzola was unprepared and did not request that Bloodworth be allowed to attend the hearing.  *Id.* at 5-6.  Apparently, Bloodworth did not inform Palazzola that he had previously been denied access to the immigration court, and Bloodworth was again detained by agents in a security area.  *Id.*  Judge Cassidy noted that Bloodworth was denied entry into the building but stated that the court would make "other means available, either telephone, affidavit, or the like, to ensure that safeguards are in place that we can have a full and complete hearing."  *Id.*  On September 15, Palazzola filed a motion to withdraw as counsel, stating that the Plaintiff and Bloodworth "have provided this law firm with false information and inconsistent statements regarding this case and their personal history."  (Doc. 11-10 at 2).

On October 28, the Plaintiff appeared without counsel and Bloodworth did not attend the hearing.[3]  *Bloodworth*, 5:13-CV-112, Doc. 74 at 7.  Judge Cassidy noted that the Plaintiff was in a "difficult situation" because Bloodworth was "a necessary party to [her] case[,]" but FPS would not allow Bloodworth to enter the building.  *Id.*  Judge

---

[3] Bloodworth did not come to the court for this hearing because he mistakenly believed the hearing was set for the previous day, although he testified that he was denied access on October 27.  *Bloodworth*, 5:13-CV-112, Doc. 74 at 7.

Cassidy again stated that he wanted to "make arrangements for [Bloodworth] to testify, albeit telephonic[ally]," provided the Plaintiff with a list of attorneys who could represent her, and suggested she find an attorney to help her.  *Id.*  After Judge Cassidy attempted to explain to the Plaintiff that he did not have authority to admit Bloodworth to the courthouse or release her from detention due to her criminal record, the Plaintiff accused Judge Cassidy of scaring away her attorneys.  *Id.*

On December 8, 2011, attorney Bonnie Youn appeared on behalf of the Plaintiff. *Id.*  Bloodworth attended the hearing and Youn presented the 601 waiver petition.  Youn requested that the court issue a subpoena to obtain the Plaintiff's medical records from the detention facility, and Judge Cassidy agreed to do so.  *Id.* at 8.  Judge Cassidy asked Youn to let him know when she wanted to reschedule the hearing.  *Id.*  On January 26, 2012, Youn filed a motion to withdraw.  *Id.*  On February 1, Judge Cassidy recused himself with an Order stating: "With the advent of the THIRD counsel's withdrawal of representation, I find it necessary to recuse myself from these proceedings to ensure a prompt and expedited hearing."  (Doc. 11-9).

On February 14, 2012, the Plaintiff appeared without counsel and the hearing was rescheduled because Bloodworth failed to appear.  *Bloodworth*, 5:13-CV-112, Doc. 74 at 9.  Finally, on February 21, 2012, the Plaintiff appeared without counsel and Bloodworth attended the hearing.  The Plaintiff and Bloodworth both testified.  *Id.*  Judge Pelletier, who replaced Judge Cassidy, had to invoke the rule of sequestration and remove Bloodworth from the courtroom because he interrupted the proceedings multiple times.  *Id.* at 9 n.10.  At the conclusion of the hearing, Judge Pelletier granted the Plaintiff's application for adjustment of status to a lawful permanent resident.  *Id.*

On January 17, 2012, Bloodworth filed a complaint with the Court, alleging that the "Atlanta Immigration Court is well known for its incompetence and inferior service in performance of [its] duties and responsibilities." *Bloodworth v. United States Dep't of Justice*, 5:12-CV-20, Doc. 1 at 4.  Bloodworth also alleged that Judge Cassidy "often participates in [e]x-[p]arte communication with government lawyers and many others," and "[t]his court its counterparts and superiors have created an atmosphere of cronyism that leads to delays, they co-mingle, overlap and administer injustice in all their activities." *Id.*  The Court dismissed Bloodworth's complaint for failure to exhaust his administrative remedies. *Bloodworth*, 5:12-CV-20, Doc. 28.

After exhausting his administrative remedies, Bloodworth filed a new complaint with the Court on March 28, 2013. *Bloodworth*, 5:13-CV-112, Doc. 1.  During his litigation, Bloodworth submitted many filings that attacked parties involved in the lawsuit. Regarding Assistant United States Attorney Sheetul S. Wall, Bloodworth alleged that she "is continuing a pattern of presenting lies and false affirmations ... [and] has attempted to mislead and present false evidence in this case." *Id.*, Doc. 67 at 1. Bloodworth filed a State Bar of Georgia complaint against Wall and submitted a copy for "the Court's evaluation." *Id.*, Doc. 69-1.  Regarding Judge Cassidy, Bloodworth alleged that the Court "granted immunity to Cassidy who has deported United States citizens and runs a reckless and unlawful deportation factory disguised as Immigration Court." *Id.*, Doc. 68 at 2.  Regarding the Court's law clerks, Bloodworth alleged that Wall visited and made phone calls to the Court's law clerks and received instructions on "tactical strategy." *Id.*  Bloodworth's filings also contained belligerent statements with capitalized

letters, including, "[f]inally the plaintiff is awaiting another ruling in this case and states LETS GET ON WITH IT MAKE THE RULING AND MOVE ON." *Id.*

On December 20, 2013, the Plaintiff and Bloodworth attended a status conference at which the Court learned that Bloodworth provided Wall with a false address. (Doc. 62 at 2:22-23). Bloodworth admitted he provided the false address because he "didn't want the United States Marshal[s] coming to my doorstep. I don't have a very good relationship with the Marshals Service, and that's the reason I didn't want them to come there." (Doc. 62 at 3:4-8). The Court also asked Bloodworth why the Plaintiff did not appear for her deposition in this case. (Doc. 62 at 3:16-22). Bloodworth admitted that he told the Plaintiff not to attend her deposition because he "was waiting for [the Court] to rule on [pending] motions." (Doc. 62 at 3:23-4:9). However, the Plaintiff admitted, when she was finally deposed, that her failure to appear "was solely [her] decision." (Doc. 39-1 at 5:24-6:4).

On May 7, 2014, the Court granted the Government's motion for summary judgment and dismissed Bloodworth's lawsuit. *Bloodworth*, 5:13-CV-112, Doc. 74. On May 23, Bloodworth filed a Notice of Appeal and attached two unrelated documents. *Id.*, Doc. 76. First, Bloodworth attached a judicial complaint he filed against the Court with the Judicial Council of the Eleventh Circuit on May 21, 2014. *Id.*, Doc. 76-1 at 1-4. Second, Bloodworth attached a document entitled, "Information That is Long Past Due and Timely Filed," which Bloodworth signed "unrespectfully submitted." *Id.* at 5-8. This document starts out by noting, "I am 64 years old and do not need a lecture from a judge with no Immigration Law experience [and] no correct knowledge of the events of 2011 in this case." *Id.* at 5. The document then states: "I will be speaking man to man

in this offer as this is something that I realize is new to you.  I have news for you, you still put on your pants the same way that I do, that being one leg at a time." *Id.* Bloodworth also stated that he has "no apologies for any of my actions in 2011 since I was operating in a hostile and unforgiving and criminal environment that takes no enemies." *Id.* at 7.

This document also included a number of belligerent statements attacking parties involved in the lawsuit, including Judge Cassidy: "CASSIDY IS A CRIMINAL AND SHOULD BE REMOVED FROM THE GOVERNMENT AS A SO CALLED JUDGE.  HE IS IN REALITY NOT A JUDGE BUT A MOUTHPIECE FOR THE JUSTICE DEPARTMENT AND NOTHIN[G] MORE, HIS NAME IS CASSIDY." *Id.*  Bloodworth also alleged that President Obama "will go down in history as the most corrupt, ill advised, incompetent and ill equipped president in our nation's history." *Id.*  Bloodworth attacked Standard Form 95, which is used to present claims against the United States under the Federal Tort Claims Act: "The form 95 is a joke and was never intended for this type of case." *Id.* at 8.  Finally, Bloodworth attacked the Court's Order: "As to your one piece of evidence statement in the order, the piece of evidence that you are referring to is an initial discovery of names of some of the criminals in Atlanta, ICE, FPS, HOMELAND SECURITY AND IMMIGRATION COURT." *Id.* at 7.

The Plaintiff filed the instant action on May 1, 2013.  The Plaintiff alleges in her complaint that she and Bloodworth were continually denied access to the court, resulting in her continued incarceration for eight months.  (Doc. 1 at ¶¶ 14-19).  By her own admission, however, the Plaintiff was never denied access to her immigration hearings.  (Doc. 39-1 at 67:16-21).  It is true that Bloodworth was denied access.  As

detailed above, Bloodworth was prohibited from attending the Plaintiff's immigration proceedings because his aggressive behavior violated courtroom procedures and led to the creation of a BOLO alert.

In numerous motions and filings, the Plaintiff, like Bloodworth, has expressed concern about the Court's ability to adjudicate her case, as well as the behavior of AUSA Sheetul S. Wall.  On March 26, 2014, the Plaintiff filed a motion to transfer the case to the Northern District of Georgia.  (Doc. 24).  The Plaintiff alleged that she "will be prejudiced by the [Assistant] U.S. Attorney's stalling and refusal to hand over information in this case.  She will use the same tactics and incompetence already on display in the [P]laintiff's husband's case."  (Doc. 24).  On April 22, 2014, the Plaintiff filed the State Bar of Georgia complaint filed by Bloodworth against Wall, and in an accompanying "notice," the Plaintiff "denounce[d] the unethical behavior" of Wall in both her case and in Bloodworth's case.  (Doc. 32 at 1).  The Plaintiff's "notice" is identical to the "notice" submitted by Bloodworth in his own litigation, which was also submitted on April 22, 2014.

On May 21, 2014, the Plaintiff and Bloodworth jointly filed a lawsuit against the Court in the Northern District of Georgia.  *Bloodworth v. Treadwell*, 1:14-CV-1505-CAP (N.D. Ga.).  They alleged that "Treadwell has consistently regurgitated the claims of the government in this case, has denied at least ten lawfully and timely filed motions by Bloodworth and has shown unprecedented bias in the Bloodworth and Cho cases."  *Id.*, Doc. 3 at 3.  On June 2, 2014, the Plaintiff filed a motion for recusal and asked the Court "to refrain from the issuance of any further orders and until such time as the pending matter in the Northern District of Georgia (1-14-CV-1505 CAP) has been duly

adjudicated to its conclusion."   (Doc. 43).   On June 5, the Plaintiff demanded that the Court "offer an answer" to the motion for recusal "as quickly as possible."   (Doc. 45 at 1).   On June 11, the Plaintiff filed another motion for recusal and provided the Court with "notice that he will be called as a witness to testify."   (Doc. 49 at 1).   The lawsuit in the Northern District of Georgia was dismissed as frivolous on June 20, 2014.   *See Bloodworth*, 1:14-CV-1505-CAP (N.D. Ga.), Doc. 4.

On June 26, 2014, Bloodworth filed a lawsuit against the Court in the State Court of Bibb County, Georgia.   *Bloodworth v. Treadwell*, No. 83212, State Court of Bibb County.   Bloodworth attempted to serve the Court with a subpoena to attend a deposition.   Included with the subpoena is a document entitled: "Treadwell's Bias Report Survey."   In the "survey," Bloodworth alleged that "[a] study of and careful analysis of the short three year history of Treadwell's previous orders and case study reveal an overwhelmingly, and predisposed tendency by Treadwell to rule in favor of the so-called 'establishment party' in all previously decided cases that were assigned to him for adjudication."   The "survey" concludes with the following: "TREADWELL'S FEDERAL COURT HAS LOST ITS PURPORTEDLY UNBIASED ATTITUDE IN FAVOR OF THE SO CALLED 'ESTABLISHMENT PARTY' IN MOST OF THE CASES."   The lawsuit was dismissed, sua sponte, on August 22.

On June 27, 2014, in a motion to compel, the Plaintiff informed the Court about the actions she and Bloodworth have taken against the Court: "As a further note in response the [P]laintiff has filed a lawsuit against the Court, and has requested that the Court recuse himself in the above entitled matter and the [P]laintiff's husband has filed a Judicial Complaint in that case and is challenging the findings in that case with the 11[th]

Circuit Court as well." (Doc. 53 at 2). Three days later, on June 30, the Plaintiff filed another motion for recusal. (Doc. 54 at 1). On July 1, in a motion to strike, the Plaintiff again asked the Court to recuse himself. (Doc. 55 at 2).

On August 1, 2014, the Plaintiff filed an "emergency motion" to disqualify the Court. (Doc. 60). The motion includes the following statements: "MTT has a deep seated bias against anyone who would have the audacity to sue a federal judge;" "MTT may be held liable for significant damages;" "MTT may be impeached therefore he has significant interest in refusing to recuse himself from this proceeding;" and "MTT entered this civil action with a closed mind and a complete and total bias against Cho." (Doc. 60 at 2, 3, 6). The Plaintiff concluded the motion with the following: "MTT, abide by the evidence produced and retire from this case or refer it to another judge as required by LAW AND DO IT NOW." (Doc. 60 at 8).

On August 18, 2014, the Plaintiff submitted a copy of a judicial complaint that she filed against the Court with the Judicial Council of the Eleventh Circuit on August 14, 2014. (Doc. 61). The Plaintiff informed the Court that she "intends to follow up this pleading with others numerous in number until [the Plaintiff] receives the response she is entitled to under the law." (Doc. 61). So far, the Plaintiff has filed ten additional "notices," all of which are identical except for the dates and handwritten notes. (Docs. 63; 64; 65; 66; 68; 69; 70; 71; 72; 73). These handwritten notes include statements such as: "Do your job!!;" "I am awaiting a response, do your job;" and "Do your job in this case!! Now." (Docs. 63; 64; 71).

On September 11, 2014, the Plaintiff filed a document, where she "now submits a deadline of September 15 for action on this case at which time local news affiliates will

be asked to investigate an[d] report on findings and complaints made herein." (Doc. 74). Again, the Plaintiff informed the Court that "other motions will follow until a response is made in this case." (Doc. 74). The Plaintiff included the contact information for the managing editor of a local news organization at the bottom of the document. (Doc. 74).

On September 22, 2014, the Plaintiff submitted a copy of a questionnaire the undersigned filled out for the United States Senate Committee on the Judiciary. (Doc. 76). The Plaintiff underlined the response to how the undersigned would resolve any potential conflicts of interest. (Doc. 76 at 3). In an accompanying document, the Plaintiff alleged, "[a]t this point the [P]laintiff asserts that the February 5, 2010[,] questionnaire statements made by you were just idle words and statements to the Senate committee to obtain approval from that Senate committee." (Doc. 76 at 1). The Plaintiff concluded her document with the following handwritten note: "former personal injury lawyers are often ambulance chasers." (Doc. 76 at 1).

Also on September 22, the Plaintiff filed a reply to the Government's response to many of the Plaintiff's outstanding motions. The Plaintiff alleged that AUSA Wall "is an irresponsible, unworthy and hopeless liar," and that "[t]his corrupt Court absolutely refuses to even question much less sanction Wall for her illegal and unethical behavior in this case." (Doc. 77 at 1). The Plaintiff included the following: "THE PLAINTIFF AGAIN STATES THAT THIS COURT CANNOT LEGALLY ADJUDICATE THIS CASE FOR THE REASONS ASSERTED IN THE MOTIONS FOR RECUSAL AND AGAIN REQUESTS RECUSAL." (Doc. 77 at 2). The Plaintiff also informed the Court that the

"activity and adjudication of this case is now being presented to local and to state news organizations." (Doc. 77 at 2).

On September 15, 2014, the Court received a package that contained the following message: "Treadwell! ABSENT action on Case # 5:13-cv-153 before Sept. 15, 2014, the enclosed advertisements will be plastered throughout city telephone polls, trees and fence posts, including Bibb County and City streets. The inaction on your behalf in this case is unlawful and will be legally contested in any manner available. I Am, Edward Bloodworth." This letter was accompanied by a large sign that reads: "Treadwell, A Corrupt Judge, Ask Me How." Bloodworth provided his telephone number on both the letter and the sign. Several days later, Bloodworth appeared outside of the courthouse for the Middle District of Georgia in Macon, Georgia, holding an almost identical sign.

Although Bloodworth is not a party in the instant action, his reference to a September 15 "deadline" parallels the "deadline" set by the Plaintiff. It seems that Bloodworth drafted many of the Plaintiff's pleadings. For example, the Plaintiff was unable to explain why she chose to use the word "renegade" in her complaint and ultimately admitted that her husband chose the word: "I had just explained to my husband all the things that I experienced, and he's the one who chose this word renegade because – and my husband had suffered a lot from ICE, as well, and so that's why he used that word, I think." (Doc. 39-1 at 103:3-106:25). *See also id.* at 125:9-11 ("[H]e's trying to handle this lawsuit on his own without hiring an attorney, he spends a lot of time and a lot – a lot of effort in the – for the lawsuit."); *Id.* at 112:22-24 ("We do everything together. If he sends anything, he will consult – he will talk to me about it

first, so I – I believe he sent it."); Doc. 39-2 at 7:10-12 (admitting that her husband helped her draft the complaint).  In fact, the Plaintiff claims that Bloodworth is "half of the Plaintiff" in this case.  (Doc. 39-2 at 34:3-5) ("In this case, there's only my name on it, but if you look at this case overall, then the same as him being the plaintiff.").

Several other facts bear mention.  In her deposition, the Plaintiff admitted that she lied to the immigration court about having a six-year-old daughter.  (Doc. 39-1 at 20:14-22:3).  The Plaintiff admitted that she lied because she wanted to evoke sympathy from the judge.  (Doc. 39-1 at 21:23-22:3).  Also, the Court received two phone calls from an individual who asked about when the Court intends to make rulings on this case.  Both times, the caller was rude, belligerent, and shouted when told that it is highly improper to call the Court's chambers.[4]

## II. DISCUSSION

In the motions presently before the Court, the Plaintiff contends the Court has made impartial rulings and statements evincing bias in this case, including: (1) statements made in the Court's Order granting in part and denying in part the Government's motion to dismiss regarding the appropriateness of the Government's submission of evidence at that stage of litigation; (2) a statement that the rights of aliens are not "coexistent" with those of United States' citizens (Doc. 49 at 6); (3) denying the Plaintiff meaningful discovery; (4) extending deadlines in favor of the Government and closely scrutinizing the Plaintiff's pleadings and administrative claim; (5) allowing falsely sworn pleadings and false statements of facts to be entered into the record; (6) showing contempt for the Plaintiff merely because she is a *pro se* litigant; (7) ordering the

---

[4] The Court has also received an improper letter on behalf of the Plaintiff.  (Doc. 33).

Plaintiff to attend her deposition at the Courthouse on December 20, 2013, when the

Court had no authority to do so; (8) the Court's statement to the Government during the

December 20, 2013, hearing that the Court would have granted a motion to dismiss had

one been filed; and (9) the Court's alleged statement that it "was growing tired of the

case" during the December 20, 2013, hearing (Doc. 49 at 3).[5]

### A.   Recusal Pursuant to 28 U.S.C. § 144

Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.   A party may file only one such affidavit in any case.   It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.   Pursuant to this statute, the Court's role is narrowly circumscribed to

determining three issues: (1) was the affidavit timely filed, (2) was it accompanied by a

certificate of good faith executed by counsel of record for the movant; and (3) is the

affidavit legally sufficient in its compliance with the statutory requirements?[6]   *Parrish v.*

*Bd. of Comm'rs of Ala. State Bar*, 524 F.2d 98, 100 (5th Cir. 1975) (citation omitted).[7]

---

[5] Some of the Plaintiff's allegations are nonsensical and require no discussion, e.g., "MTT is the defendant in this action and a judge cannot preside over a case in which he is the defendant." (Doc. 60 at 1).   Similarly, the Plaintiff alleges the Court "has significant interest in refusing to recuse himself from this proceeding" apparently because "MTT may be held liable for significant damages."   *Id.*   As noted, the two lawsuits against the Court have been dismissed as frivolous.

[6] "Since § 144 requires recusal merely on the basis of a party's belief that a judge is biased, without questioning the veracity of the affiant's allegations, it invites abuse.   Thus, the statutory

The Plaintiff has failed to meet the procedural requirements to make a showing of bias or prejudice pursuant to Section 144.  Although she has presented the facts she contends show bias within her motions, she has not filed a proper affidavit stating "the facts and the reasons for the belief that bias or prejudice exists" and attested to under the penalty of perjury.[8]  *See United States v. de la Fuente*, 548 F.2d 528, 541 (5th Cir. 1977) (holding that an informal request for recusal unaccompanied by the requisite affidavit fails to comply with Section 144).  Further, the Plaintiff's motions are unaccompanied by a certificate of counsel stating her motions have been made in good faith.  *Pro se* litigants are not excused from this procedural safeguard against abuse. *See, e.g.*, *Clark v. Deal*, 2009 WL 4899425, at *2 (N.D. Ga.) ("In light of the mandatory and automatic nature of recusal under the statute, its potential for abuse, and the availability of other statutory mechanisms pursuant to which an unrepresented litigant may seek the recusal of a federal judge, the absence of such a certificate has proven fatal to even the § 144 motions of *pro se* litigants."); *Mills v. City of New Orleans*, 2002

---

standards for compliance are strictly construed."  *United States v. Alabama*, 582 F. Supp. 1197, 1200 (S.D. Ala. 1984).

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

[8] Nor do any of her motions comply with 28 U.S.C. § 1746, which provides:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same … such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: … If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date).  (Signature)".

28 U.S.C. § 1746(2).

WL 31478223, at *2 (E.D. La.) (finding that the plain language of Section 144 prevents

*pro se* litigants from using Section 144 as a mechanism for disqualification).

Even if the Plaintiff's Section 144 motion were not procedurally deficient, her

allegations of bias clearly do not satisfy the requirements of Section 144.  As discussed

in detail below, she complains about rulings the Court has made in her case.  Adverse

rulings do not constitute pervasive bias.  *Hamm v. Members of Bd. of Regents of State*

*of Fla.*, 708 F.2d 647, 651 (11th Cir. 1983).  Accordingly, the Court finds that the Plaintiff

may not seek recusal pursuant to Section 144.

### B.  Recusal Pursuant to 28 U.S.C. § 455

Section 455 provides:

(a) Any justice, judge, or magistrate judge of the United States shall
disqualify himself in any proceeding in which his impartiality might
reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or
personal knowledge of disputed evidentiary facts concerning the
proceeding[.]

28 U.S.C. § 455.[9]

Section 455, unlike Section 144, does not require the judge to accept all

allegations as true.  *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1019 n.6 (5th

Cir. 1981) (citations omitted).  Nevertheless, the standard under Section 455(a) is

stricter than Section 144.  *Id.*  While Section 144 requires allegations sufficient to

convince a reasonable person that bias exists, under Section 455(a) the allegations

must show only that a reasonable person would harbor doubts about the judge's

---

[9] The Plaintiff also moved to disqualify the Court pursuant to 28 U.S.C. § 455(b)(3), (b)(4),
(b)(5)(i), (b)(5)(iii), and (b)(5)(iv).

impartiality.  *Id.*  "The reasonable person is presumed to possess knowledge of all the circumstances" under Section 455.  *Huff v. Standard Life Ins. Co.,* 683 F.2d 1363, 1369 (11th Cir.1982).  Bias "must stem from extrajudicial sources, unless the judge's acts demonstrate 'such pervasive bias and prejudice that it unfairly prejudices one of the parties.'"  *United States v. Bailey,* 175 F.3d 966, 968 (11th Cir.1999) (quoting *United States v. Ramos,* 933 F.2d 968, 973 (11th Cir.1991)).

Not only must an allegation of bias or prejudice be personal to a party, the party must also allege "a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate,* either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess … or because it is excessive in degree …."  *Liteky v. United States*, 510 U.S. 540, 550 (1994) ("Not *all* unfavorable disposition towards an individual (or his case) is properly described by those terms.  One would not say, for example, that world opinion is biased or prejudiced against Adolf Hitler.").  "'Impartiality is not gullibility.  Disinterestedness does not mean child-like innocence.  If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions.'"  *Id.* at 551 (quoting *in re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2nd Cir. 1943)).

The Plaintiff's allegations fail to demonstrate wrongful or inappropriate bias against the Plaintiff.  First, the Plaintiff references multiple statements made in the Court's Order granting in part and denying in part the Government's motion to dismiss regarding the Government's attempt to convert its motion to dismiss into one for summary judgment by basing its arguments on attached evidence without the benefit of a fully developed record.  (Doc. 13).  For example, the Court stated:

In support of their motion to dismiss, the Defendants have filed documents that, if authentic and true, almost certainly belie the Plaintiff's claims. While the Court can, in limited circumstances, consider matters outside the complaint, the Defendants go far beyond those circumstances. No matter how firm a party's conviction that a claim lacks merit, it sometimes is necessary to build an appropriate record before summary resolution is appropriate.

(Doc. 13 at 1).  The Court later stated:

The Defendants mainly argue, based on numerous documents attached to their motion, Cho's claims are without merit. Again, with properly authenticated documents in the context of a motion for summary judgment, it might be easily established that Cho cannot pursue her claims. However, the Court cannot make that determination on the record before it. Cho has alleged that she was improperly detained for eight months prior to her release. The Court cannot find that the alleged improper detainment is not actionable based on the state of the pleadings.

(Doc. 13 at 5). These statements do not demonstrate any personal bias toward the Plaintiff's claims or a predisposition toward granting summary judgment on those claims. On the contrary, these statements admonish the Government for improperly introducing matters outside of the pleadings with its motion to dismiss.

Second, the Plaintiff argues that the Court's alleged statement that an alien's rights are not "coexistent" with those of a citizen shows "impartiality and contempt" towards the Plaintiff. (Doc. 49 at 6-7). The Court never stated that an alien's rights were not coexistent with those of a citizen. Rather, quoting *Mirmehdi v. United States*, 689 F.3d 975 (9th Cir. 2011), the Court stated, "Deportation proceedings are such a context, unique from other situations where an unlawful detention may arise. It is well established that immigrants' remedies for vindicating the rights which they possess under the Constitution are not *coextensive* with those offered to citizens." *Id.* at 981 (citations omitted) (emphasis added); (Doc. 13 at 8-9). "Coexist" means "to exist together or at the same time" or "to exist separately or independently but peaceably,

often while remaining rivals or adversaries." *Coexist Definition*, DICTIONARY.COM, http://dictionary.reference.com/browse/coexist (last visited September 24, 2014). "Coextensive," however, means "equal or coincident in space, time, or scope." *Coextensive Definition*, DICTIONARY.COM, http://dictionary.reference.com/browse/ coextensive?s=t (last visited September 24, 2014).  The language that the Plaintiff misconstrues from the Court's Order in fact acknowledges that aliens have constitutional rights, but their remedies for vindicating those rights are not the same as those of citizens.

Third, the Plaintiff has not been denied the opportunity to conduct discovery in her case.  The only discovery requested by the Plaintiff that the Court is aware of consisted of requests for admissions, interrogatories, and requests for production of documents on March 24, 2014.  (Doc. 25-1 at 3).  The Government responded to those requests and interrogatories.  (Doc. 42-1).

Fourth, the Plaintiff complains about the Court granting extensions to the Government for its motions and other deadlines.  The only extension of deadlines in the Plaintiff's case occurred during the two-week stay of this case as a result of the Government shutdown in October 2013.  (Doc.15).  This complaint clearly does not merit any discussion.  The Plaintiff's fifth argument regarding the "lies" that the Government has presented in its statement of facts and pleadings also merits no discussion.  *Compare* United States of America's Statement of Undisputed Material Facts (Doc. 38) *with* Plaintiff's Statement of Undisputed Facts (Doc. 46).  Further, the Plaintiff has cited no basis to show the Court has contempt for her as a *pro se* litigant. *United States v. Alabama*, 582 F. Supp. 1197, 1200-01 (N.D. Ala. 1984) ("Assertions

merely of a conclusionary nature are not enough, nor are opinions or rumors." (quoting *United States v. Haldeman*, 59 F.2d 31, 134 (D.C. Cir. 1976))).

The Plaintiff also asserts numerous complaints regarding a status conference held on December 20, 2013, and her deposition taken after the conference. The Plaintiff alleges the Court made several statements demonstrating bias, including that he "was growing tired of the case," the Plaintiff would not be allowed to make any objections during her deposition, and the Court would have granted the Government's motion to dismiss had one been filed. The Plaintiff also argues that the Court lacked the authority to order her to appear for a deposition.

The Court convened the status conference due to its concerns regarding discovery and the Government's difficulty getting the Plaintiff to appear for her deposition. (Doc. 62 at 2:6-14). The Plaintiff provided the Government's counsel with a false address to serve the subpoena for her deposition because her husband did not want any United States Marshals coming to their home. (Doc. 62 at 2:18-3:8). After being subpoenaed twice, the Plaintiff's deposition was scheduled for November 14, 2013, but she did not appear. (Doc. 62 at 3:16-21). The Plaintiff's husband informed the Court that he told her not to appear.[10] (Doc. 62 at 3:22-24). The Court then informed the Plaintiff:

> [B]ased upon the facts that I see here and that you've told me about, had the government moved to dismiss Ms. Cho's complaint based upon her nonappearance for her deposition, that motion would have been granted. You do not, a plaintiff – no party unilaterally decides whether or not they're going to comply with the process of the court. That's just not how it works. That's the reason why I put in the order scheduling this hearing this

---

[10] However, the Plaintiff testified in her deposition taken immediately after the status conference that the decision not to appear at the deposition scheduled for November 14 was "solely" her own. (Doc. 39-1 at 5:24-6:4).

morning that Ms. Cho's deposition will be taken this morning immediately following this hearing.

(Doc. 62 at 4:21-5:6).  "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2).  Rule 30(d)(2) does not limit the types of sanctions available.  *See Horton v. Maersk Line, Ltd.*, 294 F.R.D. 690, 697 n.14 (S.D. Ga. 2013) ("'The full scope of sanctions available under Rule 30(d)(2) is not expressly described in the text of the rule.'" (quoting *Glick v. Molloy*, 2013 WL 140100, at *2 (D. Mont.))).  The Court would have been equally justified in holding the Plaintiff in contempt.  *See* Fed. R. Civ. P. 45(g) ("The court for the district where compliance is required … may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.").  Apart from the Federal Rules of Civil Procedure, the Court has the "inherent power to control the proceedings before it."  *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545 (11th Cir. 1993) ("[D]eeply rooted in the common law tradition is the power of any court to manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it[, and the Court's] inherent power also extends to parties to litigation." (internal quotation marks and citations omitted)).  Clearly, the Plaintiff's refusal to appear for a properly noticed deposition and her disregard of a subpoena would have warranted sanctions.

Because the Government consolidated the Plaintiff's depositions for both her case and her husband's case to avoid further wasting resources, the Court allowed the

Plaintiff's husband to sit in her deposition.  The Court then gave the Plaintiff and her

husband the following instructions:

> [O]bjections are reserved.  So by not objecting – and I'm going to expand
> this a little bit – that no objections are waived if not made during the
> deposition.  I can deal – if I think a question is improper, and later
> somebody tries to use the question and answer, I'm going to rule on it,
> regardless of whether or not there was an objection.  So with that, Mr.
> Bloodworth, there's really not even any need for you to object.  You can
> make any argument – both of you could make any argument later about
> the admissibility of an answer, even though you didn't object to it during
> the deposition.  So there won't be any need to raise any objections during
> the deposition.

(Doc. 62 at 10:13-25).  Thus, the Court actually protected the Plaintiff's ability to

preserve objections rather than have her run the risk of waiving objections by her failure

to timely or properly object.

After discussing multiple discovery issues regarding the Plaintiff's husband's

case, the Court concluded the hearing by informing the Plaintiff and her husband:

> Mr. Bloodworth, I'll have to tell you my patience is growing thin with this
> case.  There's no reason why this case should require the time that it has
> required to deal with issues such as these.  As I've said, if the government
> had moved to dismiss Ms. Cho's complaint based upon her failure to
> appear and based upon what I've heard this morning, that motion would
> have been granted, notwithstanding her pro-se status.  You are going to
> have to conduct yourself in an appropriate manner.

(Doc. 62 at 24:15-24).

The Plaintiff further complains that the Court's allowance of two days for the

Government to take her deposition shows impartiality and prejudice towards her.  "The

court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine

the deponent or if the deponent, another person, or any other circumstance impedes or

delays the examination."  Fed. R. Civ. P. 30(d)(1).  Two days were required for the

Plaintiff's deposition because of her request to use an interpreter.  The Plaintiff never

voiced any objections to conducting her deposition over two days during either day of her deposition, nor did she inform the Court that she took issue with conducting her deposition over two days until her motion to recuse filed June 11, 2014.  (Doc. 49 at 5).  Further, the Plaintiff's deposition was impeded and unnecessarily extended by her husband's multiple interruptions.  (Doc. 39-1 at 7:9-10, 38:6-24, 55:14-56:18, 58:20-59:17, 83:6-85:15).

Thus, the Plaintiff has not alleged a form of bias that is wrongful or inappropriate as contemplated by Section 455.  Nor has the Plaintiff alleged any source of bias that is not judicial in nature.  "The point of the distinction is that the bias 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case[.]'"  *Phillips*, 637 F.2d at 1020.  "[A] motion for disqualification ordinarily may not be predicated on the judge's rulings in the instant case or in related cases, nor on a demonstrated tendency to rule any particular way, nor on a particular judicial leaning or attitude derived from his experience on the bench."  *Id.* (citations omitted).

Finally, recusal is not appropriate merely because the Plaintiff and her husband have filed harassing lawsuits against the Court.  "Judges need not recuse themselves merely because they are named as defendants in a *meritless* action or merely because they have been personally attacked by the defendant in other proceedings."  *Coggins v. Town of Jackson's Gap*, 2008 WL 2074429, at *2 (M.D. Ala.) (emphasis added).  Further,

> Important reasons exist for a judge not to disqualify routinely, as this
> would permit and might even encourage litigants to manipulate and abuse
> the judicial process, which could undermine public confidence in the
> integrity of the judiciary.  Automatic disqualification of a judge cannot be

obtained by the simple act of suing the judge, particularly where the suit is primarily based on the judge's prior judicial rulings.

U.S. Comm. on Codes of Conduct Op. 103 (June 2009). "[T]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is. … Indeed, a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation." *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014) (internal quotation marks and citations omitted).

Certainly the Plaintiff and her husband have provided ample motivation for the Court to recuse, but the Court is not of a mind to burden another judge with their shenanigans. Again, it would be an abdication of this Court's responsibility to allow Cho and Bloodworth to force recusal with their baseless complaints. Accordingly, recusal is not appropriate pursuant to Section 455. For the foregoing reasons, the Plaintiff's motions are **DENIED**.

**SO ORDERED,** this the 10th day of October, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT